UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-09-667 |
| | § | |
| KAYODE AKAMO | § | |

**OPINION AND ORDER**

Pending before the Court is Plaintiff United States of America's Motion for Summary Judgment (Doc. 24), as well as Defendant Kayode Akamo's Response (Doc. 26) and the Government's Reply (Doc. 30). Upon review and consideration of this motion, the response and reply thereto, the relevant legal authority, and for the reasons explained below, the Court finds that the Government's motion for summary judgment should be granted.

I.  Background and Relevant Facts

The Government brings this action to revoke the citizenship of Kayode Akamo ("Akamo"), pursuant to Section 340(a) of the Immigration and Nationality Act of 1952 ("INA"), as amended, 8 U.S.C. § 1451(a).  (Doc. 1 ¶ 1.)

Akamo was born in Nigeria on July 31, 1956 and first entered the United States in September 1980.  (Doc. 24 at 2.)

On January 18, 1982, Akamo was charged with felony credit card abuse.  (Doc. 24-3 at 2.)  The court "deferred further proceedings without entering an adjudication of guilt and placed [Akamo] on community supervision for a period of three years and assessed a fine of $2,000." (*Id.*)  Akamo's deferred adjudication was terminated three years later and the case dismissed. (*Id.*)

On May 20, 1983, Akamo was charged with theft by check ($200–$10,000).  (*Id.*)  The

charge was later dismissed for insufficient evidence. (Doc. 24-3 at 2–3.)

On September 15, 1987, Akamo became a lawful permanent resident alien of the United States. (Doc. 1 ¶ 5; Doc. 24-4, Akamo permanent resident alien card)

On September 16, 1993, Akamo was charged with shoplifting. (Doc. 24-3 at 2–3.) Akamo pleaded guilty to misdemeanor theft ($200–$750), was sentenced to ninety days' confinement, and fined $300. (Doc. 24-3 at 2–3.)

On March 6, 1995, Akamo filed an Application for Naturalization ("Form N-400") with the Houston, Texas, District Office of the Immigration and Naturalization Service ("INS") under file number A 91-223-135. (Doc. 24-1, Akamo form N-400.)

On October 10, 1995, Akamo was interviewed by an INS officer concerning his application for naturalization. (Doc. 1 ¶ 8.) Akamo's application for naturalization was approved, and the INS mailed Akamo a Notice of Naturalization Oath Hearing ("Form N-445") informing him that he was scheduled to take the oath of allegiance on January 18, 1996. (*Id.* ¶¶ 10–12; Doc. 24-5, Akamo form N-445) Form N-445 also required Akamo to answer specific questions regarding events that took place after his October 10, 1995 naturalization interview, and to certify that the answers he provided on the form were true and correct. (*Id.*)

On January 17, 1996, Akamo signed Form N-445 certifying that his answers on the form were true and correct. (*Id.*) In response to Question 3, "*After your interview*, have you knowingly committed any crime or offense, for which you have not been arrested . . . [,]" Akamo checked the box labeled "No". (*Id.*)

On January 18, 1996, Akamo took the oath of allegiance and was admitted to United States Citizenship. (Doc. 1 ¶ 13.) Akamo was issued Certificate of Naturalization No. 22117557. (Doc. 24-6, Akamo citizenship certificate.)

On April 17, 1996, Akamo, along with Robert Charles Aturhomemro, was indicted for Conspiracy, Mail Fraud, and Execution of the Scheme and Artifice in the Southern District of Texas, Houston Division. (Doc. 24 at 3; Doc. 24-9, Akamo superceding indictment). The indictment charged, inter alia, with the following overt act in furtherance of the conspiracy:

> (1) On or about December 1, 1995, Defendant Kayode Akamo Adio rented a mail box at 1813 Bingle Road, #286, Houston, TX 77055, using for identification a Texas Drivers License in the name of Maura Kolb.

(Doc. 24-9 at 3.)

On May 23 1996, Akamo pled guilty to counts one and three of the superceding indictment, which charged him with Conspiracy to Violate the Laws of the United States in violation of 18 U.S.C. § 371 and Mail Fraud in violation of 18 U.S.C. § 1341, in the amount of $287.258.40, respectively. (Doc. 24 at 3–4; Doc. 24-10, Plea Agreement.) At the time of his plea of guilty, Akamo signed a plea agreement providing the following factual basis for his plea:

> [Akamo] and a co-conspirator obtained a commercial check dated January 31, 1996 payable to Gulf Energy Marketing in the amount of $287,258.40. [Akamo] and the co-conspirator attempted to obtain access to the funds by depositing the check in a brokerage account with Rauscher Pierce Refsnes, Inc., in Dallas. [Akamo] and the co-conspirator opened the account using the name and social security number of James Norcross, and placed unauthorized endorsements on the check in the names of Norcross and Gulf Energy Marketing. Account application documents submitted by [Akamo] and the co-conspirator to Rauscher Pierce contained false information concerning the account holder's name, home and business addresses, social security number, tax identification number, home and business telephone numbers, etc. [Akamo] and the co-conspirator used various method to avoid detection, including using as a business address for mail delivery a mail box rented by using an assumed name, using as a business phone number a voicemail answering service which was secured by using an assumed name, and making payment for that phone service by using a stolen credit card. [Akamo] and the co-conspirator used Federal Express, and caused Rauscher Pierce to use Federal Express, to deliver materials, such as account documents and the stolen check, to further the scheme to defraud. Upon being confronted by law enforcement officers at the mail drop, [Akamo] fled but was later

apprehended.

(Doc. 24-10 at 8.)

On September 12, 1996, Akamo was sentenced to fifteen months' imprisonment, followed by three years of supervised release.  (Doc. 1 ¶ 15; Doc. 24-11, Akamo judgment.)

On October 11, 2002, Akamo pled guilty to two felony counts of knowing misuse of a Social Security number in violation of 42 U.S.C. § 408(7)(B), and was sentenced to probation and four months' home confinement.  (Doc. 24 at 4; Doc. 24-12, Docket sheet for case 3:02-CR-00731.)

On March 6, 2009, the Government filed the instant suit to revoke Akamo's citizenship.  (Doc. 1.)  The Government now moves for summary judgment.  (Doc. 24.)

## II.  Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  Moreover, if the party moving for summary judgment bears the burden of proof on an

issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998) (overruled on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006)). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert.*

*denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). The nonmovant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). There is a "genuine" issue of material fact if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

III. Discussion

An order admitting a person to citizenship may be revoked and a certificate of naturalization cancelled, if the order and certificate of naturalization "were illegally procured or were procured by concealment of a material fact or by willful misrepresentation[.]" 8 U.S.C. § 1451(a). Once citizenship has been conferred, however, it should not be taken away without

the clearest of justification and proof.  See *Fedorenko v. United States*, 449 U.S. 490, 505 (1981).  Nevertheless, there must "be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship.  Failure to comply with any of these conditions renders the citizenship 'illegally procured,' and naturalization that is unlawfully procured can be set aside." *Id.* at 506; see also *United States v. Marilyn Thi Dang*, 488 F.3d 1135, 1139 (9th Cir. 2007) (holding that courts have no discretion in excusing conduct and must enter a judgment of denaturalization if the government sustains its burden); *U.S. v. Norris*, 749 F.2d 1116, 1122 (4th Cir. 1984).  Naturalization is "illegally procured" when the individual was statutorily ineligible before becoming a naturalized citizen. *Fedorenko*, 449 U.S. at 506.  Naturalization is also subject to revocation when procured by concealment or misrepresentations "that are both willful and material." *Kungys v. United States*, 485 U.S. 759, 767 (1988) (citing *Fedorenko*, 449 U.S. at 507 n.28).

In a denaturalization case, the Government has to prove its case by evidence that is clear, convincing and unequivocal. *Baumgartner v. U.S.*, 322 U.S. 665 (1944); *Meyer v. U.S.*, 141 F.2d 825 (5th Cir. 1944); *Fedorenko*, 449 U.S. at 505 (1981).  The Court should construe the facts and the law as far as reasonably possible in favor of the citizen. *Schneiderman v. U.S.*, 320 U.S. 118, 122 (1943).  However, there is no statute of limitations on a denaturalization proceeding brought by the Government.  See 8 U.S.C. § 1451; *Costello v. United States*, 365 U.S. 265, 283 (1961).

The Government argues that Akamo illegally procured citizenship and that it therefore has a duty to seek his denaturalization pursuant to 8 U.S.C. § 1451(a). (Doc. 24 at 7–9.)  It is certainly possible that, had the Government know all the facts of this case at the time Akamo was interviewed in connection with his application for naturalization and took the oath of allegiance,

his application would have been denied due to his inability to make a showing of good moral character. *See* 8 C.F.R. §§ 316.10. That, however, is not the question now before the Court. The central question here is when the conspiracy, to which Akamo pled guilty on May 23, 1996, began. (Doc. 24-10.) This is important because if the conspiracy began on or about December 1, 1995, when Akamo, using the name Maura Kolb, rented the mailbox in furtherance of the conspiracy, as charged in count one of the superceding indictment, Akamo's answer to Question 3 on his Form N-440, signed January 17, 1996, was knowingly false. (Doc. 24-5.)

The Government contends the conspiracy began "[o]n or about December 1, 1995," as alleged in the indictment. (Doc. 24-9 at 3.) To prove its contentions, the Government relies primarily on the indictment and subsequent plea agreement. (Docs. 24-9 and 24-10, respectively.) Count one of the indictment alleges that:

> Beginning in or about December 1995 and continuing through in or about February 1996, in the Houston Division of the Southern District of Texas and elsewhere, Defendants Kayode Akamo Adio and Robert Charles Aturhomemro knowingly combined, conspired, confederated and agreed, together and with each other and with other persons both known and unknown to the grand jury, to knowingly cause the use of the mails in execution of a scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1341.

(Doc 24-9 at 1–2.) The "Manner and Means of the Conspiracy" section of the superceding indictment alleges in paragraph 11 that "Defendants would and did rent a mail box using a false identification for the purpose, in part, of receiving correspondence from Rauscher Pierce." (*Id.* at 2–3.) The "Overt Acts" section of the superceding indictment alleges in paragraph 13(1) "On or about December 1, 1995, Defendant Kayode Akamo Adio rented a mail box at 1813 Bingle Road, #286, Houston, Texas 77055, using for identification a Texas Drivers License in the name of Maura Kolb." (*Id.* at 3.)

The factual statement in Akamo's plea agreement states that he and his co-conspirator

fraudulently "obtained a commercial check dated January 31, 1996," but the statement does not mention the renting of the mail box, leaving the date of the beginning of the conspiracy unspecified in the plea agreement. (Doc. 24-10 at 8.) The false name, Maura Kolb, in which the superceding indictment charges Akamo rented a mail box on or about December 1, 1995 in furtherance of the conspiracy, is also not mentioned in the factual statement of Akamo's plea agreement. (*Id.*; Doc. 24-9 at 3.)

Akamo admits he rented a mailbox in the false name of Maura Kolb, "probably around '95, '96," not in furtherance of the conspiracy, but due to marital difficulties; he did not want his wife to know what mail he was receiving. (Doc. 24-2, Akamo deposition at 18–19, 33.) He contends that the conspiracy to which he pled guilty did not begin "until the end of January or even the early part of February 1996." (*Id.* at 74.)

There is no dispute of material fact that Akamo rented the mail box on or about December 1, 1995, that he used a false name and social security number in renting it, and that the mail box was used to facilitate the conspiracy alleged in count one of the superceding indictment, to which he pled guilty. After pleading guilty to count one of the indictment, Akamo nevertheless, in this lawsuit, maintains that his intention in renting the mail box, which facilitated the conspiracy to which he pleaded guilty, was not to facilitate the conspiracy, but rather to deceive his wife.

The government argues in its reply brief that Akamo is collaterally estopped from claiming that he did not rent the mailbox in furtherance of the mail fraud conspiracy. (Doc. 30 at 1.) Collateral estoppel is appropriately applied to foreclose relitigation of an issue when (1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the

judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine. *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 391 (5th Cir. 1998) (citing *Copeland v. Merril Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir. 1995)); *see also United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994).

The issue here, whether Akamo rented a mailbox on December 1, 1995 in furtherance of the mail fraud conspiracy is identical to the issue in the prior criminal case, Akamo's commission of the crimes charged in the superceding indictment and to which he pled guilty was fully and fairly litigated in the Southern District of Texas, and the issue was necessary to support that judgment. Because the first three requirements have been satisfied and Akamo's conviction is not in doubt, there are no special circumstances to prevent satisfaction of the fourth element. *See Winters*, 149 F.3d at 391-92 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–31 (1979)).

Finally, the Court notes that the Government provided the affidavit of Daniel H. Evans ("Evans"), a special agent with the Federal Bureau of Investigation ("FBI"), who investigated the prior criminal case against Kayode Akamo and his co-conspirator Robert Charles Aturhomemro. (Doc. 30-1.) Evans testifies that when interviewed by the FBI:

> Akamo admitted to being asked by "Charles" (true identity, Robert Charles Aturhomemro) to use the post office box he opened at Express Pagers on December 1, 1995, to facilitate this fraudulent scheme; to receiving the brokerage account application via this post office box after seeing the stolen energy company check in Charles's possession; to subscribing to a telephone answering service used during this scheme; and to paying for this service with a fraudulently procured credit card in the name Charles Powers. An FBI investigation revealed that he fraudulently applied for this credit card on December 1, 1995.

(*Id.* ¶ 10.)

IV.  Conclusion

Accordingly, the Court hereby **ORDERS** that Plaintiff United States of America's Motion for Summary Judgment (Doc. 24) is **GRANTED.**

SIGNED at Houston, Texas, this 25th day of March, 2011.

                                          MELINDA HARMON
                                 UNITED STATES DISTRICT JUDGE